IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rickey Nathaniel Brown a/k/a Ricky Brown,<br><br>           Plaintiff,<br><br>v.<br><br>R.J. Reynolds Tobacco Company, Inc.; Brown & Williamson Tobacco Corporation; Lorillard Tobacco Company; and Phillip Morris, USA., Inc.,<br><br>           Defendants. | C/A No.: 4:22-2938-JD-KDW<br><br><br><br><br>REPORT AND RECOMMENDATION |

    Rickey Nathaniel Brown, Plaintiff, is a state prisoner proceeding pro se and *in forma pauperis*. He brings this action seeking damages against Defendants. Plaintiff is presently incarcerated by the South Carolina Departments of Corrections at Broad River Correctional Institution. Plaintiff alleges Defendants have committed wire, radio, and television communication fraud, as well as acted in violation of several other state statutes. On October 17, 2022, Defendants Phillip Morris USA, Inc., and Defendant R. J. Reynolds Tobacco Company, Inc., on behalf of itself and its successors-Defendants Brown & Williamson Tobacco Corporation and Lorillard Tobacco Company filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 22. Plaintiff filed his Response on December 16, 2022. ECF No. 33.[1] Defendants filed a reply on January 3, 2023. ECF

---

[1] Prior to filing his Response, Plaintiff filed a Motion for Procedural Default against Defendants, arguing that Defendants failed to serve Plaintiff with their Motion to Dismiss. ECF No. 28. Plaintiff contends that upon receiving a *Roseboro* Order from the court, he contacted the clerk's office and learned that Defendants filed a Motion to Dismiss. ECF No. 28; ECF No. 28-1. Plaintiff attached what he purports to be a mail delivery log, which shows on September 15, 2022, he received mail from the U.S. District Court, and that it was purportedly delivered to him on October 21, 2022. ECF No. 28-2. However, attached to Defendants' Motion to Dismiss is a certificate of service, attesting to the fact that Defendants mailed Plaintiff the Motion on or about October 17, 2022, the date it was filed. ECF No. 22 at 3. Thus, it appears Defendants did mail Plaintiff a copy of the Motion, but whether Plaintiff received it may be in question. For this reason, the undersigned

No. 34. Plaintiff then filed a sur reply on January 24, 2023. ECF No. 35.[2] This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

I.     Factual Background

Plaintiff brings this lawsuit against Defendants, alleging they are liable for damages flowing from Plaintiff's smoking habit that began in 1973 when he was twelve years old and continued through 2003. Plaintiff's Complaint is similar to several other pro se lawsuits filed in the past year by inmates currently incarcerated at the Broad River Correctional Institution. *See* ECF No. 22-1 at 1, n. 1. Indeed, while Plaintiff alleges some facts that are specific to him personally, much of the approximately 65-page Complaint is a recitation of a timeline of purported advertisements, television commercials, and other media appearances by Defendants seeking to induce the American public into smoking their tobacco products. Additionally, much like many of the other Complaints, Plaintiff makes nearly identical accusations regarding the means and methods by which Defendants attempted to conceal the true harmful nature of tobacco products

---

recommends denying Plaintiff's Motion for Procedural Default. ECF No. 28. Additionally, the undersigned notes that, out of an abundance of caution, the court sent Plaintiff another copy of the Motion, and he responded to said Motion.

[2] Under Local Rule 7.07, a reply to a Motion is allowed, although discouraged. The Local Rules do not provide for Sur-Replies. A party may seek permission from the court to file an additional response or "sur-reply." *Perez v. S.C. Dep't of Labor, Licensing and Regulation*, No. 3:17-CV-3187-JFA, 2018 WL 2455093, at *4 n.10 (D.S.C. June 1, 2018). Plaintiff did not seek permission to file a sur-reply in this case; however, the undersigned, in her discretion, may consider any additional arguments made that address any novel arguments made in Defendants' Reply. The undersigned notes that Plaintiff appears to simply argue in his sur-reply that the court should not consider the arguments made in Defendants' pleadings. *See* ECF No. 35 at 3.

from the American public beginning in 1950. *See* ECF No. 1 at 15-16.[3]

According to the allegations in Plaintiff's Complaint, Plaintiff alleges that from 1973 through 2003, including while he was incarcerated, he smoked Winston cigarettes. ECF No. 1 at 8. Plaintiff alleges he smoked Kool menthol filtered light cigarettes from 1973 to 2003. *Id.* Plaintiff alleges he smoked Newport menthol cigarettes from 1973 through 2003. *Id.* Plaintiff alleges he smoked Marlboro menthol filtered cigarettes from 1973 through 2003. *Id.* Plaintiff alleges that Defendants knowingly manufactured, designed, promoted, marketed, advertised and sold its cigarettes to Plaintiff, and he subsequently became addicted to smoking. *Id.* at 9-13. Plaintiff alleges that Defendants "foreseeably knew" and were aware that their tobacco products contained "hazardous compound substances" or "carcinogenic constituents" that were harmful to people's health, but they did not provide any warnings or notices but instead represented that their products were safe. *Id.* at 13.

Within his Complaint, Plaintiff outlines the history of Defendants' advertisements and statements made to the American public regarding its tobacco products. *Id.* at 18-28. Plaintiff alleges Defendants published or advertised via newspapers, magazines, and television, that its tobacco products did not have any adverse health effects. *Id*. The last known date Plaintiff alleges and Defendants made these statements was May 2002-2004, wherein Defendant R.J. Reynolds Tobacco Company, Inc. allegedly made statements in several magazines and publications that nicotine was not added to cigarettes, and that it disagreed with smoking being addictive. *Id.* at 21.

---

[3] By way of example of the largely duplicative claims, Plaintiff alleges that from April 17, 1950 until May 27, 1950, scientists conducted research experiments in Washington, D.C. and that during this time Plaintiff heard from publications, saw on television and on outdoor billboards as a minor child from ages 7 to 12, purportedly information from Defendants. See ECF No. 1 at 15-16. However, if Plaintiff began smoking in 1973 at the age of 12, then he was born in 1961 and would not have been alive in the 1950s.

3

Similarly, Plaintiff alleges on May 9 or 10, 2004 that Defendants issued an advertisement for Kool brand cigarettes.[4] Plaintiff alleges that over the years he read, observed, and detrimentally relied upon these advertisements and statements by continuing to purchase and smoke cigarettes. ECF No. 1. at 19. Plaintiff further alleges that Defendants gave him a "false sense of security of hope and assurance" that quitting smoking would not "resolve the issue." ECF No. 1 at 34. The undersigned reads the Complaint as a whole to assume Plaintiff is referring to health issues generally. Plaintiff alleges that "based upon recently discovered information and belief" he learned on April 28, 2022 that Defendants concealed to the American public, including Plaintiff, the harmful nature of its tobacco products. ECF No. 1 at 15, 31. Plaintiff alleges he suffered injuries including chronic coughing, wheezing, shortness of breath, respiratory infections, hay fever, allergies, loss of enjoyment of life, anxiety, throat irritations, high blood pressure, frustration, and alteration of lifestyle. *Id.* at 29.

Plaintiff brings several causes of actions against Defendants, including intentional fraud; intentional fraudulent misrepresentation; intentional fraudulent inducement; intentional fraudulent concealment; intentional tort of battery; negligent failure to warn; civil conspiracy to commit fraud; negligence; gross negligence; strict product liability; breach of express warranty; tort of fear of contracting cancer. ECF No. 1 at 4. Within Plaintiff's Complaint, he tackles head on the issue of the statute of limitations on some of his alleged claims by arguing that this court should invoke the doctrine of equitable estoppel. Plaintiff alleges that due to Defendants' purposeful concealment of information to the American public, Plaintiff only recently discovered the harmful nature of cigarettes. *Id.* at 15, 31.

---

[4] By 2004, Plaintiff had already quit smoking. Indeed, Plaintiff alleges that he quit smoking "with having symptoms of withdrawals on or about 2003." ECF No. 1 at 21.

II.     Standard of Review

Defendants filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Within the Motion, Defendants also cite to Federal Rule of Civil Procedure 9(b), which provides a heightened pleading requirement for allegations of fraud.[5] "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6).

The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *see also Tobey v. Jones*, No. 11-2230, 2013 WL 286226, at *3 (4th Cir. Jan. 25, 2013) (affirming district court's denial of Rule 12(b)(6) motion, noting that *Twombly* reiterated that a plaintiff "was not required to state [] precise magical words" to plausibly

---

[5] Federal Rule of Civil Procedure 9(b) provides: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

plead claim). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Pro se complaints are to be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). While the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto,* 405 U.S. 319, 322 (1972), the court is not required to recognize "obscure or extravagant claims." *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs. Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The undersigned notes that Plaintiff attached supporting documents to his Response, which appear to be printouts of news articles and

a recent court opinion concerning the dangers of smoking. ECF No. 33-2. The undersigned does not find that these documents were incorporated into the Complaint or integral to the analysis of this Motion to Dismiss. Accordingly, the undersigned has not considered these documents in this analysis.

III.    Analysis

     1.  Negligent Failure to Warn/Strict Liability Claims

Defendants argue that, to the extent Plaintiff seeks to bring a negligence claim based upon an alleged "failure to warn" the public, including himself, or a claim for strict liability, regarding the health risks of cigarette smoking, that claim is preempted by the Public Health Cigarette Smoking Act of 1969 (the "PHCS Act"). ECF No. 22-1 at 4-5. Alternatively, Defendants argue those claims are time barred. Under this cause of action, Plaintiff alleges that Defendants "undertook a duty" on or about January 4, 1954 (a date when Plaintiff was not yet born) to accept an interest in people's health, and aid and assist research efforts into tobacco use and health. ECF No. 1 at 54. Plaintiff further alleges under this cause of action that Defendants "created the risk or intentionally created risk" by taking affirmative steps to disregard the foreseeable knowledge of dangers. ECF No. 1 at 54. In other words, it appears Plaintiff alleges that Defendants disregarded an alleged duty to inform the public about the dangers of smoking. With respect to his "product strict liability" claim, Plaintiff alleges that he suffered injury and irreparable damages as a result of Defendants' products. ECF No. 1 at 58.

The congressional intent behind the Act[6] was to "establish a comprehensive Federal

---

[6] The PHCS Act, enacted in 1969, amended the Federal Cigarette Labeling and Advertising Act (the "Cigarette Labeling Act"). The PHCS Act re-enacted the Cigarette Labeling Act, along with several amendments. Congress did not amend or replace 15 U.S.C. § 1331, which is the provision that sets out Congress' policy determination regarding the regulation of tobacco products. *Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155, 173 (4th Cir. 1998), *aff'd*,

program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health." 15 U.S.C. § 1331. Under the PHCS Act, it is unlawful "for any person to manufacture, package, sell, offer to sell, distribute, or import for sale or distribution within the United States any cigarettes the package of which fails to bear" an adequate warning label. 15 U.S.C. § 1333(a)(1). The PHCS Act further provides that, "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).

The United States Supreme Court has determined that this statute preempts state law failure to warn claims arising out of marketing or advertising cigarettes. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524 (1992); *see also Waterhouse v. R.J. Reynolds Tobacco Co.*, 162 F. App'x 231, 235 (4th Cir. 2006) (explaining in a footnote that in a similar case, a post-July 1, 1969 negligence claim based on a failure to warn was preempted by the Cigarette Labeling Act). Plaintiff argues that *Cipollone* does not preempt claims that are predicated upon reliance solely on a manufacturer's testing or research practices and/or other actions unrelated to advertising and promotion. ECF No. 33 at 3. He further alleges his claims are predicated upon a duty not to deceive or make false statements to the public. ECF No. 33 at 3. However, a review of his Complaint does not find this argument to be the case. Plaintiff does not make any reference to deceit or false statements in these causes of action. Furthermore, Plaintiff's Complaint outlines the history of Defendants' advertising and marketing campaigns to induce the American public into purchasing its tobacco products. While Plaintiff does allege that Defendants undertook to "conceal" information that revealed the harms associated with cigarette smoking, those facts appear to be the basis for his alleged fraud

---

529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000).

claims. Moreover, Plaintiff does not allege that these Defendants failed to include any government-mandated warnings on its products. While Plaintiff's other claims, including fraudulent inducement and fraudulent misrepresentation may be based upon this alleged duty not to conceal information or deceive the public, the undersigned agrees with Defendants that Plaintiff's negligent failure to warn claim is preempted and should be dismissed.

As to Plaintiff's strict liability claim, the undersigned finds that Plaintiff has wholly failed to plead the elements for strict liability in this case. Under South Carolina law, to bring a product liability action under both negligence and strict liability theories, a plaintiff must show: (1) he was injured by a product; (2) the product, at the time of the "accident," was in essentially the same condition as when it left the hands of the defendant; and (3) the injury occurred because the product was in a defective condition and unreasonably dangerous to the user. *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 489 (D.S.C. 2001). Here, Plaintiff has simply not pled these factors. Indeed, Plaintiff simply states he has been injured by Defendants' products. However, Plaintiff does not allege when his injuries arose, and it is clear from his Complaint that he stopped smoking in 2003. Moreover, a stated in *Waterhouse*, there is a presumption in strict liability cases that a plaintiff would "have read and heeded an adequate warning if it had been given." 162 F. App'x at 234-35. Here, by the time Plaintiff began smoking, there were warning labels on the product, and Plaintiff provides no allegations suggesting he was unable to understand or to heed the warning label. Accordingly, the undersigned recommends dismissing Plaintiff's strict liability claim for failure to state a claim for relief under Federal Rule 12(b)(6).

    2. Negligence and Fraud/Fraudulent Misrepresentation/Fraud in the Inducement Claims

Defendants next argue that Plaintiff's fraud-based claims, as well as his other negligence

9

claims, are barred by the applicable three-year statute of limitations in South Carolina.[7] In South Carolina, the statute of limitations for personal injury claims based on fraud or negligence is three years. S.C. Code Ann. §§ 15-3-530(5), 15-3-530(7). The statute of limitations for these claims begins to run after a plaintiff knew or should have known *through the exercise of reasonable diligence* that he or she had a cause of action. S.C. Code Ann. § 15-3-535 (emphasis added). In *Burgess v. American Cancer Soc., SC. Div., Inc.*, the court explained, "[a] party cannot escape the application of this rule by claiming ignorance of existing facts and circumstances, because the law also provides that if such facts and circumstances *could have been known* to the party through the exercise of ordinary care and reasonable diligence, the same result follows." 386 S.E.2d 798, 799, 300 S.C. 182 (S.C. Ct. App. 1989) (emphasis in original). However, for fraud claims, the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud claim. S.C. Code Ann. § 15-3-530(7).

As to Plaintiff's negligence/gross negligence claim, Plaintiff alleges that Defendants had a "statutory duty under § 39-1-20 *et seq*.[8] to exercise a reasonable care, to not make intentionally 'untrue' statements of a material facts, in rendering their services, security, merchandise, sells, to

---

[7] Ordinarily, a statute of limitations defense must be raised as an affirmative defense; thus, a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) generally does not reach the merits of an affirmative defense, such as an argument that a plaintiff's complaint is time-barred. However, in the rare circumstances where facts sufficient to rule on this affirmative defense are alleged and are clear on the face of the complaint, the defense may be considered. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The undersigned finds this to be such a case.

[8] Under S.C. Code Ann. § 39-1-20, "any person who knowingly, with intent to sell or in any wise dispose of merchandise, securities, service or anything offered by such person, directly or indirectly, to the public for sale or distribution or with intent to increase consumption thereof, to induce the public in any manner to enter into any obligation relating thereto . . . makes, publishes, disseminates, circulates, or places before the public or causes directly or indirectly, to be made, published or in any other way, an advertisement of any sort regarding merchandise . . or anything so offered to the public which contains any assertion, representation or statement of fact which is intentionally untrue, shall be guilty of a misdemeanor."

10

any person in their advertisements." ECF No. 1 at 55. Plaintiff further alleges this duty was breached when Defendants made "untrue" statements in their advertisements constituting a violation of § 39-1-20. ECF No. 1 at 55. Finally, Plaintiff alleges as a result of this breach, he suffered a variety of injuries. *Id.* at 56. Based on a liberal reading of Plaintiff's Complaint, and the statute he cites, it appears Plaintiff seeks to bring a negligent misrepresentation claim. To state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *Hand v. SunTrust Bank, Inc.*, No. 6:11-CV-00501-JMC, 2012 WL 3834859, at *3 (D.S.C. Sept. 4, 2012) (citing *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 504, 354 S.C. 459, 473 (S.C. Ct. App. 2003)). Further, in South Carolina, to state a claim for negligent misrepresentation, one must show that a defendant owed a duty of care to communicate truthful information. *Pitten v. Jacobs*, 903 F. Supp. 937, 951 (D.S.C. July 6, 1995).

Liberally construing Plaintiff's Complaint, Plaintiff does not allege that any action on the part of Defendants occurred within the three years prior to filing his case sufficient to support this cause of action. According to the Complaint, the last statement Defendants allegedly inducing the American public to smoke occurred on between May of 2002 and May of 2004.[9] Moreover, as

---

[9] Plaintiff alleges that some of the statements made occurred prior to the time he was born. However, for argument's sake and for the purposes of this Report and Recommendation, the undersigned assumes Plaintiff was aware of or saw at least some of the advertisements mentioned in his Complaint, as he alleges.

pointed out by Defendants, it is equally unclear when Plaintiff's injuries, which he attributes solely to his smoking habit, began. Further, while Plaintiff alleges a statutory duty owed by Defendants, that statute makes it a misdemeanor to make intentionally untrue statements in advertising which Plaintiff does not allege occurred within the three years prior to filing this lawsuit.

While Plaintiff indicates he should be entitled to some tolling period, he provides no support for this contention, nor does he allege that his injuries did not begin until after September 1, 2019, three years from the filing of his Complaint. Nor does Plaintiff allege that Defendants somehow induced him into delaying the filing of a lawsuit. In his Response, Plaintiff vaguely asserts that from 1957 to 1984, Defendants "interfered" in some way with the Surgeon General's duties and public statements to forewarn the public about the nature of smoking. ECF No. 33 at 6.[10] However, such threadbare recitals of this cause of action simply will not suffice to support a claim for relief. *Iqbal,* 556 U.S. at 678. Plaintiff also alleges that pursuant to the discovery rule, he did not know until April 2022 that cigarettes were harmful. However, as other courts have recognized, the dangers of cigarette smoking have long since been known to the American public. In *Little v. Brown & Williamson Tobacco Corp.*, the district court considered whether the health risks associated with cigarette smoking was "common knowledge" as to an individual who smoked from 1961 through 1995. 243 F. Supp. 2d 480, 493-494 (D.S.C. 2001). In that case, the court observed that undoubtedly at some point during that time, all of the health risks associated with cigarette smoking became common knowledge. *Id.* Here, Plaintiff began smoking in 1973. He alleges he did not realize smoking was harmful until April 2022. However, based upon the fact that Plaintiff does not plausibly allege that Defendants owed a duty that was then breached, the

---

[10] In his Response, Plaintiff cites to a time frame of July 15, 1957 to 1984 as to when Defendants "affirmatively interfered" with the Surgeon General. ECF No. 33 at 6. Plaintiff was not born until 1961.

undersigned recommends finding Plaintiff's negligence claims should be barred by the three-year statute of limitations.

As to Plaintiff's fraud claims, the undersigned notes that Plaintiff repeats the same standard for both his intentional fraud claims and his fraudulent misrepresentation claims. That is, he sets forth the standard for establishing a cause of action for fraudulent inducement. Under South Carolina law, to establish fraud in the inducement, one must show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of the falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon the truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Anthony v. Atl. Grp., Inc.*, 909 F. Supp. 2d 455, 483 (D.S.C. 2012) (citing *Redwend Ltd. P'ship v. Edwards,* 3581 S.E.2d 496, 503–04, 54 S.C. 459 (S.C. Ct. App .2003)). Plaintiff asserts as his first cause of action "intentional fraud," but cites to this standard. ECF No. 1 at 44. In his second cause of action, labeled as "intentional fraudulent misrepresentation," Plaintiff incorporates the essential elements he listed for his "intentional fraud" claim. ECF No. 1 at 49. For his fourth cause of action, "intentional fraudulent concealment," Plaintiff states Defendants intended to make statements that were "calculated" to "prevent" inquiry or mislead the American public. ECF No. 1 at 51. Finally, his fifth cause of action, "intentional fraudulent inducement," Plaintiff alleges similar elements as he did for his fourth cause of action; that is, Plaintiff alleges Defendants "intended" to deceive the American public. ECF No. 1 at 53. In short, Plaintiff contends that these Defendants made false representations concerning the health impacts of their tobacco products, either recklessly or knowingly, with the intent to induce the American public to rely on these representations to purchase their tobacco products. There does not appear to be a distinct difference between the causes of action sounding in fraud. Further, Plaintiff contends that he was ignorant of the falsity

of these claims until April 2022, when Defendants informed the American public, including Plaintiff, that they lied about the harmful nature of their products.

Plaintiff alleges that due to the actions of Defendants, it was unknown to him that smoking cigarettes was harmful until April 2022. In his Response, Plaintiff generally alleges that Defendants "knowingly took affirmative steps and measures 'calculated' to affirmatively 'prevent' inquiry or to mislead the American members of the public . . . including Plaintiff . . . from knowing the whole knowledge of truth that cigarette smoking is a factor and causal link of causing lung cancer and other related disease." ECF No. 1 at 52.[11] At this stage of the litigation, assuming Plaintiff's allegations are true, the undersigned cannot definitively find that Plaintiff's allegations sounding in fraud are time-barred based on the allegations within the Complaint.

However, the undersigned recommends dismissing Plaintiff's fraud claims because he fails to state a claim for relief sounding in fraud. Fraud may not be presumed; rather it must be shown by "clear, cogent, and convincing evidence." *Brown v. Stewart*, 557 S.E.2d 676, 680, 348 S.C. 33 (S.C. Ct. App. 2001). Further, Federal Rule of Procedure 9(b) requires a heightened pleading standard for claims based on fraud. Pursuant to this Rule, a party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As an initial matter, as previously mentioned, courts have long recognized that smoking was generally known to be dangerous by 1978, at which time Plaintiff would have been approximately seventeen years old. *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 172 (5th Cir. 1996) (explaining that the "dangers of cigarette smoking have long been known to the community."). Further, as aptly pointed out by Defendants, every pack of cigarettes Plaintiff smoked would have contained a warning label, warning Plaintiff about the dangers of smoking cigarettes. *See* 15 U.S.C. §§ 1331,

---

[11] Notably, Plaintiff does not allege as one of his injuries that he has lung cancer.

14

1333. It is implausible for Plaintiff to allege that he was ignorant to the dangers of smoking cigarettes when the product itself provided such a warning.

Moreover, Plaintiff's fraud claims are conclusory and fail to meet the pleading standard found in Federal Rule of Civil Procedure 9(b). Plaintiff's allegation that Defendants intended for their false representations to be acted upon by Plaintiff or that Defendants took affirmative steps to prevent the American public from asking questions about its tobacco products are insufficient to support a finding that he pled these fraud claims with particularity. These allegations about the general corporate statements made in advertisements and on television are also insufficient to allow Defendants to determine which statements Plaintiff relies upon as having personally been aware of to allege these claims. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (explaining that one purpose of Rule 9(b) is to ensure a defendant has sufficient information to formulate a defense based on the conduct Plaintiff purports to allege supports the basis of his or her claims). Specifically, Plaintiff makes a blanket reference in these causes of action that he "adopts and incorporates the factual allegations" in previous paragraphs for each fraud claim. *See* ECF No. 1 at 44-54. However, these paragraphs include statements that, put simply, Plaintiff could not plausibly have "relied upon" or acted in "reasonable" reliance upon in deciding to smoke. By way of example, Plaintiff alleges in his Complaint that he "heard" or "read" certain statements, followed by an allegation that on March 19, 1952, Defendant R.J. Reynolds Tobacco Company, Inc. published an advertisement that Winston cigarettes (a brand Plaintiff alleges he smoked) have no adverse effects on the health of consumers. *See* ECF No. 1 at 16-18. However, Plaintiff would not have been alive at this time. Plaintiff further contends that on May 9 or 10, 2004 Defendant Brown & Williamson Tobacco Corporation issued advertisements in several publications that "Kool" brand cigarettes are associated with hip hop, as if to induce

15

consumers to purchase this brand. ECF No. 1 at 23. However, Plaintiff alleges elsewhere that he quit smoking prior to this date; thus, he could not have relied upon these advertisements as an inducement to continue smoking. Plaintiff also submits that he has been incarcerated since 1993; thus, it goes without saying that Plaintiff's access to the publications and television advertisements referenced in the Complaint would be somewhat curtailed.

While Plaintiff alleges he met the heightened standard of pleading found under Rule 9(b) because he sets forth the elements of his fraud claims, the undersigned finds that Defendants are left unable to determine which alleged statements Plaintiff relied upon or what the "concerted" actions are that Plaintiff alleges occurred to conceal the dangers of smoking to the American public during the time period he alleges he smoked cigarettes. These alleged statements and actions, some of which occurred prior to his birth or prior to or after the time he smoked, simply cannot be the basis of a fraud claim, or be considered to have been pled with any particularity, when Plaintiff alleges he began smoking in 1973, and again, by the time Plaintiff began smoking, every cigarette pack contained a warning label that was in the consumer's view. In other words, Plaintiff's fraud claims are conclusory and simply repeat the elements of those causes of actions while incorporating a blanket reference to other allegations elsewhere in the Complaint. Thus, for the reasons outlined above, the undersigned recommends dismissing Plaintiff's fraud claims (styled as intentional fraud, intentional fraudulent misrepresentation, intentional fraudulent concealment, and fraud in the inducement) for failure to state a claim upon which relief can be granted.[12]

---

[12] Though not specifically addressed as a cause of action, the undersigned recommends dismissing Plaintiff's civil conspiracy to commit fraud and concealment claim, as well. Under South Carolina law, the elements of a cause of a civil conspiracy claim are: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; and (3) which causes the plaintiff special damage. *BCD LLC v. BMW Mfg. Co., LLC*, 360 F. App'x 428, 437 (4th Cir. 2010). In the Complaint, Plaintiff alleges Defendants "jointly came together with mutual assented minds to act in concerted action" with each other. ECF No. 1 at 56. He further alleges this occurred "December

3. "Fear of Cancer" Claim, Breach of Express Warranty, and Intentional Tort of Battery

Defendants next argue that Plaintiff's "fear of cancer" claim must be dismissed because it is not a recognized cause of action under South Carolina law. Similarly, Defendants argue that Plaintiff has failed to allege any facts to support a claim for either breach of express warranty or the tort of battery. Plaintiff concedes that he has failed to state a prima facie case under either of these theories. ECF No. 33 at 17. Plaintiff requests the ability to amend under Federal Rule of Civil Procedure 15(a)(b)(c). *Id.*

Under South Carolina law, a "battery" is the "actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995 (citing *Jones v. Winn-Dixie Greenville, Inc.*, 456 S.E.2d 429, 432, 318 S.C. 171 (S.C. Ct. App. 1995)). The elements of a breach of express warranty are: (1) the existence of an express warranty; (2) the breach of the express warranty; and (3) damages proximately caused by the breach. *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 511 (D.S.C. 2007). Plaintiff has alleged no set of facts that could conceivably support any element of a prima facie case under these causes of action. Nor does Plaintiff provide any proffered amendment to his Complaint, which is by all accounts a lengthy recitation of alleged facts, that would support either of these claims. Nor do any of the causes of action brought by Plaintiff include

---

14 through [December] 28, 1953," and that Defendants "clandestinely engaged and acted with specific intent to commit fraud." ECF No. 1 at 56. First, Plaintiff was not alive during this time period. Second, the elements Plaintiff lists appear to be in line with a criminal conspiracy cause of action, which Plaintiff has no standing to bring. Nevertheless, because the undersigned recommends finding Plaintiff failed to state a claim for relief that these Defendants engaged in fraud, the undersigned recommends dismissing any alleged civil conspiracy to commit fraud, as well.

17

any set of facts that would support these claims. Accordingly, the undersigned recommends dismissing these claims against Defendants.

IV.     Recommendation

The undersigned has carefully considered the arguments made by all parties in this case. After considering these arguments, the undersigned recommends granting Defendants' Motion to Dismiss, ECF No. 22. Similarly, for the reasons previously stated, the undersigned recommends denying Plaintiff's Motion for Procedural Default, ECF No. 28. Plaintiff's Complaint would therefore be dismissed in its entirety against Defendant R.J. Reynolds Tobacco Company on behalf of itself, individually, and as successor-by-merger to Lorillard Tobacco Company and as successor-in-interest to Brown & Williamson Tobacco Corporation, and Defendant Phillip Morris, USA, Inc. (the "Defendants").

IT IS SO RECOMMENDED.

July 11, 2023                                                             Kaymani D. West
Florence, South Carolina                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).